# PRACTICE REPORTS.

## SUPREME COURT.

### BEACH agt. THE BAY STATE STEAMBOAT COMPANY.

Any state or nation has a right to give its citizens redress for any personal injuries, committed without, as well as within its territorial limits, when it obtains the means of exercising jurisdiction over the wrongdoer. Nor is the authority of the state curtailed in this respect, because the redress is given by *statute* instead of the common law.

A purely *penal* law is strictly local, and has no operation beyond the jurisdiction of the country where it was enacted. But whether a *remedial statute* is *extra-territorial*, in reference to the class of injuries for which it provides, depends, like other statutes, upon the intention of the legislature; a penal' statute may also be a remedial law; and a statute may be penal in one part and remedial in another.

*Held*, that the statutes of 1847 and 1849, allowing compensation to the representatives of deceased persons for causing death by wrongful act, neglect or default, although the second section of the act of 1849 is undoubtedly penal, are entirely remedial.

And there is no reason to infer, that the legislature intended to confine the operation of these acts, in their remedial features, to injuries committed within the territorial limits of this state, or to exempt therefrom persons natural or artificial, residing in other states, (where jurisdiction is acquired over them.)

*It seems*, that these statutes merely provide in their remedial character, an extension of the remedy afforded by the common law.

*New - York Special Term, April,* 1858.
DEMURRER to complaint.
VOL. XVI.                1

Beach agt. The Bay State Steamboat Company.

——————————, *for plaintiff.*
——————————, *for defendants.*

CLERKE, Justice. It cannot be denied that any one state or nation has a right to give its citizens redress for any personal injury committed without, as well as within its territorial limits, when it obtains, the means of exercising jurisdiction over the wrongdoer. This has been always recognized in the common law. Many, if not most of the actions instituted in our courts of justice, are transitory and not local; and if the cause upon which any one of them is founded, arose in Japan, it would be just as tenable as if it arose in the state of New-York. The authority of the state in this respect is not curtailed, because the redress is given by statute, instead of having been permitted by the common law. They are both alike, the expression of the supreme power, equally entitled to obedience and respect.

It is erroneous, therefore, to say " that statutes (which means *all* statutes) are local, and only effectual within the limits of the state, on acts therein done." A penal law, indeed, is strictly local, and has no operation beyond the jurisdiction of the country where it was enacted. But, whether a remedial statute is *extra-territorial* in reference to the class of injuries for which it proposes to afford redress or compensation, depends, like other statutes, upon the intention of the legislature, to be gathered from the language employed, the law as it previously existed in relation to the same subject, the mischief to be prevented, and the remedy to be applied. And, we must also bear in mind, that every such statute is to be liberally construed.

It has been asserted that the statutes of 1847 and 1849, allowing compensation to the representatives of deceased persons for causing the death of those persons by wrongful act, neglect or default, are penal, and not remedial statutes. The second section of the act of 1849, is undoubtedly penal. But a penal statute may also be a remedial law, (1 *Wils.* 126 ;) and a statute may be penal in one part, and remedial in an-

Beach agt. The Bay State Steamboat Company.

other. (*Dougl.* 702.) But in the redress which these statutes afford to the bereaved families of those who have been deprived of life, by the wrongful act, neglect or default of others, they are entirely remedial; and they are calculated to be most beneficent in their operation, not only in their compensatory effect in warding off, at least for a season, the destitution of many a family, bereft of its provider, but in preventing the frequent occurrence of the melancholy disasters, which are, too often, the result of the most culpable carelessness and disregard of human life.

I can see no reason to infer, that the legislature intended to confine the operation of these acts, in their remedial features, to injuries committed within the territorial limits of this state, or to exempt persons, natural or artificial, residing in other states, provided the necessary steps are taken to obtain jurisdiction over such persons. The language is, doubtless, very general, and does not expressly specify injuries committed without the state, and does not specify anything relative to the residence or citizenship of the perpetrators of the injury, or if they are artificial persons, the place or country where they might have been organized. But on the other hand, it does not except such injuries or such persons; and there is no reason whatever to suppose, when we consider the nature of the calamity to be redressed, and the purpose for which redress is prescribed, that the legislature intended any restriction beyond what the generality of the language itself imports.

With regard to the penal section of the act of 1849, we cannot, by that, construe the remedial section. Each stands by itself on the well known rules of construction; a strict construction for the one, a liberal construction for the other; and in the absence of anything to the contrary, we are to suppose that the legislature intended that the acts in question should be interpreted according to those rules, which are part and parcel of the law of the land, recognized by the legislature as well as by the judiciary; and all laws, it must be presumed, are framed in reference to them.

And after all, do not these statutes merely provide, in their

remedial character, an extension of the remedy afforded by the common law? To be sure, the death of the deceased, and not the injury which caused the death, is the immediate ground of the action. But the death is the sad result and serious aggravation of the injury, by which the family are deprived of the means of support, as the deceased person himself, if he survived the injury, would, according to the extent of it, be deprived of the ability to contribute to their support. If Mr. Beach were maimed and mutilated by this explosion, and survived the accident, he certainly would, by common law, have a right of action for damages against the defendants, whether it occurred within this state or not. The action would be, undeniably, transitory. Do these acts, in their remedial features, go any further than to extend and transmit this common law right, giving compensation for the injury that produced the death, to the family and representatives of the deceased?

For these reasons, I hold that this action is well brought, even on the assumption, that the explosion occurred without the territorial limits of the state of New-York.

Demurrer overruled with costs, with liberty to answer within ten days on payment of costs.